IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| v. | CASE NO.: 2:21-cr-3 |
| TERRY KEY | |

**ORDER AND MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

This matter is before the Court on Defendant's Motion to Suppress and Motion to Bifurcate. Docs. 32, 48. The Government filed Responses in Opposition to Defendant's Motions. Docs. 59, 61. The Court held a hearing on Defendant's Motions on May 3, 2021. Following the hearing, the Government filed a Supplemental Response to Defendant's Motion to Suppress. Doc. 67. Defendant also filed a Supplemental Memorandum on his Motion to Suppress. Doc. 68. For the reasons that follow, I **DENY** Defendant's Motion to Bifurcate Trial. Doc. 48. I also **RECOMMEND** the Court **DENY** Defendant's Motion to Suppress. Doc. 32.

**BACKGROUND**

Defendant has been indicted on: one count of possession of controlled substances with intent to distribute, in violation of 21 U.S.C. § 841; one count of possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c); and one count of possession of a firearm by a prohibited person, in violation of 18 U.S.C. § 922(g)(1). Doc. 1. These charges stem from an investigation by law enforcement officials in Wayne County, Georgia.

Defendant filed a Motion to Bifurcate and Motion to Suppress, which are addressed herein. Docs. 32, 48. Additionally, the Court conducted a hearing on May 3, 2021, at which the

parties addressed Defendant's Motions.[1]  Following the hearing, the Government and Defendant filed supplemental briefing.  Docs. 67, 68.

The undersigned's Order and Report and Recommendation is based on the entire record before the Court, including the parties' written submissions and argument presented at the May 3, 2021 hearing.

## DISCUSSION

I. **Defendant's Motion to Bifurcate Trial**

Defendant moves to bifurcate his trial.  Doc. 48.  Defendant is charged with possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1).  Doc. 1.  Defendant contends his trial should be bifurcated—to reserve the § 922(g)(1) charge in Count Three until a second phase—so jurors do not learn of his prior felony convictions, unless and until the jury finds he met the other elements of the offense (namely, possession of a firearm).  Doc. 48 at 1.  Further, Defendant argues, absent bifurcation he will be prejudiced by the jury learning of his status as a felon.  Id. at 2–5.  In the alternative, Defendant urges the Court for another form of relief, such as a stipulation to Defendant's status as a felon.  Id. at 4.

The Government opposes Defendant's Motion.  Doc. 59 at 16.  The Government argues bifurcation is not appropriate in this case.  Id. at 17–19.  Further, the Government states it would stipulate to Defendant's status as a convicted felon if the case goes to trial.  Id. at 17.  Moreover, the Government contends Defendant's status as a felon would be presented to the jury regardless of bifurcation, as it intends to present evidence of other acts and previous convictions under Federal Rule of Evidence 404(b).  Id. at 19 (citing Doc. 30).

---

[1]  At the hearing, neither party presented witnesses.  This does not hinder the Court's ability to resolve the issues because Defendant's suppression challenge is based on the contents of the warrant itself, which has been submitted to the Court.  The Court can resolve the facial challenge to the warrant on the undisputed facts.

2

According to Rule 8(a) of the Federal Rules of Criminal Procedure, "The indictment or information may charge a defendant in separate counts with 2 or more offenses if the offenses charged . . . are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan." Fed. R. Crim. P. 8(a). "Rule 8 is broadly construed in favor of the initial joinder." United States v. Dowd, 451 F.3d 1244, 1249 (11th Cir. 2006) (citation omitted). However, even where joinder is appropriate under Rule 8(a), "Rule 14 [of the Federal Rules of Criminal Procedure] permits relief from prejudicial joinder, including severance of counts, 'if the joinder of offenses in an indictment appears to prejudice a defendant.'" United States v. Williams, 177 F. App'x 914, 924 (11th Cir. 2006) (quoting United States v. Walser, 3 F.3d 380, 385 (11th Cir. 1993)). Any prejudice which might occur due to a trial court's "refusal to bifurcate the trial" can be mitigated by several things, including giving the jury proper instructions. United States v. Bennett, 368 F.3d 1343, 1351 (11th Cir. 2004), *judgment vacated on other grounds by* 543 U.S. 1110 (2005).

Here, Defendant has failed to meet his burden of showing any compelling prejudice that would result by having all the charges against him prosecuted in a single trial. As both parties note, Defendant can mitigate any prejudice which may occur due to the joinder of all counts by stipulating to his status as a convicted felon. See United States v. Miller, 255 F.3d 1282, 1289 (11th Cir. 2001) (finding the defendant's general allegation of "some prejudice" does not meet the "specific and compelling prejudice" standard for severance, especially given the defendant's stipulation to being a convicted felon). Additionally, Defendant has not challenged the Government's 404(b) notice, in which the Government states its intention to introduce evidence of Defendant's prior convictions. Doc. 30. Where evidence of prior convictions would have been admissible regardless, a district court does not abuse its discretion in refusing to bifurcate a

trial.  United States v. Hodges, 616 F. App'x 961, 966 (11th Cir. 2015) (citing United States v. Gabay, 923 F.2d 1536, 1540 (11th Cir. 1991)).

Accordingly, I **DENY** Defendant's Motion to Bifurcate Trial.  Doc. 48.

**II.     Defendant's Motion to Suppress**

Defendant seeks to suppress evidence obtained as a result of a search warrant obtained and executed on Room 121 of Motel Jesup located at 3939 Savannah Highway, Jesup, Georgia.  Docs. 32, 68.  Defendant argues the warrant affidavit was deficient and the information provided failed to establish probable.[2]  Doc. 68 at 6–19.  Additionally, Defendant argues the information used to procure the warrant was stale.  Id. at 19–21; see also doc. 32 at 11–13.

The Government opposes Defendant's Motion to Suppress, arguing the affidavit in support of the warrant application established probable cause for the issuance of a search warrant.  Doc. 61 at 3.  Additionally, the Government contends even if the warrant was not supported by probable cause, the good-faith exception applies.  Id. at 9.  Further, the Government argues because Defendant's probation included a Fourth Amendment waiver, the inevitable-discovery exception to the exclusionary rule also applies and prevents the suppression of the evidence sized in this case.[3]  Doc. 67 at 3–8.

---

[2]     In his initial briefing on the Motion to Suppress, Defendant argued there was no affidavit accompanying the search warrant.  Doc. 32 at 3.  In the discovery originally provided to Defendant, the affidavit in support of the search warrant was missing (or, at least, a critical page was missing).  Doc. 68 at 1–2; Doc. 32 at 21–22.  After Defendant filed his Motion to Suppress, both the Government and Defendant sought and obtained certified copies of the original warrant application.  Doc. 68 at 2.  After reviewing a certified copy, the parties agree the warrant affidavit was provided to the magistrate and is accurately reflected at Docket Number 61-1.  Accordingly, Defendant abandoned his claim there was no affidavit in support of the search warrant.  Doc. 68 at 2.  However, Defendant maintains the affidavit and application are deficient on their face.

[3]     The Government is not arguing Defendant's purported Fourth Amendment waiver eliminated the need for a warrant.  Instead, the Government contends the discovery of evidence was inevitable because of the waiver.  Defendant, on the other hand, addresses the waiver in terms of standing, but also expressly opposes the Government's inevitable-discovery argument.  Doc. 68 at 18–19, 26–30.  Because I decline

4

Before addressing each of Defendant's arguments, it is important to note affidavits supporting search warrants are presumed to be valid. See United States v. Whyte, 928 F.3d 1317, 1333 (11th Cir. 2019) (citing Franks v. Delaware, 438 U.S. 154, 171 (1978)). Where a defendant seeks suppression of evidence seized during a search conducted pursuant to a warrant, the defendant has the burden of establishing that the warrant was defective or executed improperly. Id. (citing United States v. Van Horn, 789 F.2d 1492, 1500 (11th Cir. 1986); United States v. Marx, 635 F.2d 436, 441 (5th Cir. 1981); United States v. Osborne, 630 F.2d 374, 377 (5th Cir. 1980)); United States v. Vigo, 413 F.2d 691, 693 (5th Cir. 1969) ("Defendants have the burden of proof in challenging the validity of the execution or service of the search warrant."); United States v. Norris, No. 1:05-CR-479, 2006 WL 8425336, at *7 (N.D. Ga. May 18, 2006), *report and recommendation adopted*, 2007 WL 9657874 (N.D. Ga. Sept. 18, 2007).

**A.     Facts**

On June 24, 2020, Investigator Anthony Surrency, a narcotics investigator with the Wayne County Sheriff's Office, obtained a search warrant for Room 121 of the Motel Jesup. Doc. 61-2 at 1. Investigator Surrency, along with members of the Wayne County Sheriff's Office and the Georgia Bureau of Investigation, executed the search warrant that same day. Id. When officers arrived to execute the search warrant, Defendant was outside the room at Motel Jesup. However, once he saw the officers, Defendant ran into Room 121. Id.

Investigator Surrency is a Deputy with the Wayne County Sherriff's Office with 27 years of law enforcement experience at the time the warrant was executed. Doc. 61-1 at 4. As a law enforcement officer, he has been involved in general patrol functions, as well as those associated

---

to address the Government's inevitable discovery argument, no further discussion of the parties' positions on Defendant's purported Fourth Amendment waiver is necessary.

with drug enforcement.  Id.  He has also assisted in undercover operations making controlled drug purchases from drug dealers and other drug investigations and drug enforcement activities.  Id.

Investigator Surrency obtained the search warrant from a magistrate judge in Wayne County.  Doc. 61-1.  The warrant application was supported by an affidavit from Investigator Surrency, detailing his observations and investigations of Defendant beginning on June 19, 2020.  Doc. 61-1 at 2–7.  Specifically, Investigator Surrency explained he had been conducting surveillance on June 19, 2020, at Motel Jesup, located in Wayne County, Georgia, when he observed Defendant coming out of Room 121 and handing something to a white male.  Id. at 6.  Two days later, on June 21, 2020, Investigator Surrency received a phone call from a confidential informant ("CI") advising him Defendant was selling methamphetamine at Motel Jesup.  Id.

Following this phone call, Investigator Surrency conducted additional surveillance at Motel Jesup.  Id.  On June 22, 2020, Investigator Surrency explained he saw a series of short transactions between Defendant and various individuals, which would occur after these individuals knocked on the door of Room 121 at Motel Jesup.  Id.  These transactions at the motel took less than a minute, which Investigator Surrency stated were indicative of drug transactions, based on his training, knowledge, and experience.  Id.

Investigator Surrency included information about Defendant's criminal history in the application, which included a 2007 conviction for the sale of marijuana, a 2011 conviction for possession of cocaine with intent to distribute, and a pending charge for possession of firearm during the commission of a crime, trafficking cocaine for which Defendant was on bond.  Id.  Investigator Surrency also provided information about Defendant's sentencing in 2018 that

6

included five years of probation with a Fourth Amendment waiver as a special condition of probation.[4] Id.

### B. Legal Standard

"The right of the people to be secure in their person, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. "Probable cause exists when 'there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" United States v. Grubbs, 547 U.S. 90, 95 (2006) (quoting Illinois v. Gates, 462 U.S. 213, 238 (1983)). "Probable cause to search a residence requires some nexus between the premises and the alleged crime." United States v. Joseph, 709 F.3d 1082, 1100 (11th Cir. 2013) (internal citation omitted). "Probable cause is a fluid concept—turning on the assessment of probabilities in particular factual contexts" and is based on the "totality of the circumstances test." Id. (internal citations and punctuation omitted).

Under the standard established in Illinois v. Gates, 462 U.S. 213 (1983), "[T]he task of a judge issuing a search warrant is to determine if a warrant sufficiently describes the place to be searched, enabling the executing officer to locate and identify the premises with reasonable effort, and whether there is any reasonable probability that other premises might be mistakenly searched." United States v. White, 356 F.3d 865, 868–69 (8th Cir. 2004) (citing United States v. Nichols, 344 F.3d 793, 797 (8th Cir. 2003)). "The duty of a reviewing court is simply to ensure that the judge had a substantial basis for concluding that probable cause existed." Id. at 869

---

[4] The warrant application and affidavit state Defendant's felony sentence with probation and the Fourth Amendment waiver are attached to the affidavit. However, the parties agree no attachment was provided with the affidavit.

(citing Gates, 462 U.S. at 238–39).  "Courts are to interpret affidavits in a nontechnical, common-sense fashion, and the [judge's] determination of probable cause is entitled to great deference."  Id. (alteration in original) (citing United States v. Arenal, 768 F.2d 263, 266 (8th Cir. 1985)).

"A reviewing court's task is not to make a de novo finding of probable cause but rather to decide whether the issuing magistrate—whose assessment of the affidavit's factual presentation is entitled to 'great deference'—had a 'substantial basis' for finding probable cause."  United States v. Rangel, CR417-218, 2018 WL 817845, at * 6 (S.D. Ga. Jan. 18, 2018) (quoting Gates, 462 U.S. at 236, 238–39); see also United States v. Leon, 468 U.S. 897, 914 (1984) ("Reasonable minds frequently may differ on the question of whether a particular affidavit establishes probable cause, and we have thus concluded that the preference for warrants is most appropriately effectuated by according 'great deference' to a magistrate's determination.") (citations omitted).  In even "doubtful or marginal cases," the probable cause determination should be upheld.  Rangel, 2018 WL 817845, at * 6 (quoting United States v. Scott, 555 F.2d 522, 527 (5th Cir. 1977)) (internal quotation marks omitted).

### C.     The Warrant Was Supported by Probable Cause

Defendant analyzes each paragraph of the warrant affidavit, arguing many of Investigator Surrency's observations could describe entirely innocent behavior.  Specifically, Defendant argues there is nothing criminal about the alleged transactions and interactions occurring at Motel Jesup as described in the affidavit.  Doc. 68 at 7–19.  Additionally, he contends Investigator Surrency's affidavit does not establish that the CI's tip was credible and, thus, cannot be relied upon in a probable cause determination.  Id.

However, the Court must consider the totality of the circumstances, and should not consider each individual observation in isolation. Considering the totality of the circumstances, I find there was a substantial basis for the issuing Magistrate Judge's finding of probable cause to issue a search warrant for Room 121 at Motel Jesup based on the affidavit.

First, the affidavit contains descriptions of multiple, short transactions, each taking less than a minute, between Defendant and various individuals taking place after Defendant exited Room 121. Doc. 61-1 at 6. Defendant argues there is no proof of any "transaction" and the affidavit does not include details about what was exchanged. Defendant insists nothing in the warrant or affidavit indicates an exchange (i.e., a quid pro quo). Doc. 68 at 16. However, the word transaction itself indicates an exchange. See Transaction, Black's Law Dictionary (11th ed. 2019) (describing a transaction as an instance of "conducting business" and "a business agreement or exchange"). Moreover, Investigator Surrency stated that based on his knowledge, training, and experience, the transactions he observed were indicative of drug transactions, and the magistrate was free to rely on Investigator Surrency's knowledge about drug transactions. See United States v. Joseph, 709 F.3d 1082, 1100 (11th Cir. 2013) (stating an officer's expectation based on his training and experience that evidence will likely be found in the place to be searched can establish probable cause). Although a first-hand observation of an exchange of drugs for money would certainly demonstrate illicit drug transactions, it is not the only indicator of such criminal activity. Individuals engaged in the illegal drug trade have every incentive to hide their activity, and, therefore, the frequent, short-duration transactions observed by Investigator Surrency support probable cause.

Defendant similarly argues Investigator Surrency merely described instances where someone innocuously knocked on the someone else's door, which can be explained as purely

9

innocent conduct. Doc. 68 at 16. But Investigator Surrency did not state he saw mere conversations or neighborly interactions between individuals; Surrency stated he saw transactions between Defendant and various individuals at the door of a motel room on approximately 10 occasions in a short time span. Doc. 61-1 at 6. Several transactions outside a motel room across two days are different in kind than neighbors visiting each other and do in fact, indicate drug activity. United States v. Powell, 222 F.3d 913, 915-18 (11th Cir. 2000) (finding repeated, short visits and swift departures from residence indicative of drug activity).

The affidavit also describes a phone call Investigator Surrency received from a CI advising him Defendant was selling methamphetamine at Motel Jesup. Id. Defendant argues this does not provide any indication of criminal activity because there is nothing in the warrant that would allow the magistrate to assess the veracity of the CI. Doc. 68 at 8–14. An "[informant's] 'veracity' and 'basis of knowledge' . . . [are] relevant considerations in the totality of the circumstances analysis that traditionally has guided probable cause determinations: a deficiency in one may be compensated for by a strong showing as to the other." United States v. Brundidge, 170 F.3d 1350, 1352–53 (11th Cir. 1999) (quoting Gates, 462 U.S. at 233). A deficiency in one of these considerations may also be compensated for through "corroborating evidence gathered by law enforcement officials." United States v. Foree, 43 F.3d 1572, 1576 (11th Cir. 1995). However, "[w]hen there is sufficient independent corroboration of an informant's information, there is no need to establish the veracity of the informant." United States v. Johnson, 444 F. App'x 424, 425–26 (11th Cir. 2011) (internal citation omitted) (alteration in the original) (affirming denial of motion to suppress where corroborating evidence included affiant's observation of controlled buys of narcotics); Ortega v. Christian, 85 F.3d 1521,

1525 (11th Cir. 1996) (corroboration through independent police work adds significant value to a probable cause analysis).

Here, there was no need to establish the veracity of the informant because Investigator Surrency corroborated the tip through his own surveillance. The CI called Investigator Surrency on June 21, 2020, stating Defendant was selling methamphetamine at Motel Jesup. Doc. 61-1 at 6. The next day, on June 22, 2020, Investigator Surrency conducted surveillance and observed Defendant engage in approximately 10 short transactions with individuals at the motel, which were indicative of drug transactions. Id. Thus, the affidavit contains sufficient first-hand observations by Investigator Surrency at Motel Jesup to corroborate CI's report and establish the CI's reliability. See United States v. Foree, 43 F.3d 1572, 1576 (11th Cir. 1995) (corroborating evidence gathered by officers can provide indicia of reliability); United States v. Bates, Case No. 1:13-CR-00501, 2017 WL 9439178, at *8 (N.D. Ga. June 1, 2017) (finding information provided by a CI was corroborated by controlled buys even though no information about the CI was provided in the warrant).

Finally, the affidavit includes information about a prior conviction for sale of marijuana, a prior conviction for possession of cocaine for intent to distribute, and the fact Defendant was currently out on bond for possession of a firearm during the commission of a crime, trafficking cocaine. Doc. 61-1 at 6. Investigator Surrency inclusion of Defendant's criminal history is also a relevant consideration and supports a finding that probable cause existed to issue the search warrant. This information is may be considered and supports a finding of probable cause. See United States v. Farese, 612 F.2d 1376, 1379 n.5 (5th Cir. 1980) (citing United States v. Harris, 403 U.S. 573, 583 (1971)) (recognizing criminal record may be considered in assessing probable cause); United States v. Anderson, 152 F. App'x 915, 917 (11th Cir. 2005) (considering

defendant's criminal history contained in an affidavit as support for the magistrate's determination of probable cause); United States v. Kelly, No. 2:20-CR-030, 2021 WL 1379516, at *4 (N.D. Ga. Jan. 12, 2021) (finding an affidavit provided probable cause to search an instant messaging account where the affidavit included information concerning Defendant's criminal history among other things).

In sum, the affidavit, which included Investigator Surrency's observations of Defendant at Motel Jesup, the CI's corroborated tip, and Defendant's past criminal history, established a sufficient nexus between Room 121 at Motel Jesup, where Defendant was staying, and the alleged illegal activity, selling illegal controlled substances. Accordingly, the observations and evidence described in the affidavit are adequate to provide a substantial basis for the magistrate's finding of probable cause to believe illegal controlled substances would be found in Defendant's motel room.

### D.    The Warrant Was Not Supported by Stale Information

Defendant also argues the warrant is not valid because it was based on stale information. The warrant was based on information from June 19, 21, and 22, and was secured and executed on June 24, 2020. See Docs. 61-1, 61-2. That is, two days separated Investigator Surrency's last observations of Defendant at Room 121 of Motel Jesup and when he obtained and executed the warrant. Nonetheless, Defendant argues the information was stale due to the transient nature of motels. Doc. 68 at 19–22. The Government opposes this portion of Defendant's Motion and argues the information contained in the affidavit was ripe. Doc. 61 at 8.

In determining the issue of "staleness" in the context of probable cause, "the information supporting the . . . application for a warrant must show that probable cause exists at the time the warrant issues." United States v. Lopez, 649 F.3d 1222, 1246 (11th Cir. 2011). However,

"[t]here is no particular rule or time limit for when information becomes stale." United States v. Bervaldi, 226 F.3d 1256, 1265 (11th Cir. 2000). "Rather, staleness is an issue which must be decided on the peculiar facts of each case." Id. (internal citation and punctuation omitted). In making such an analysis, "[i]n addition to the length of time, courts should consider the 'nature of the suspected crime (discrete crimes or ongoing conspiracy), habits of the accused, character of the items sought, and nature and function of the premises to be searched.'" Id. (quoting United States v. Harris, 20 F.3d 445, 450 (11th Cir. 1994)). In its consideration of the nature of the crime, the Eleventh Circuit "has distinguished between criminal activity which is protracted and continuous and that which is isolated[.]" Id. If an affidavit details "activity indicating protracted or continuous conduct, time is of less significance." Id. (internal citation and punctuation omitted). Drug activities are those the Eleventh Circuit Court of Appeals has noted to "be inherently protracted and continuous." United States v. Magluta, 198 F.3d 1265, 1272 (11th Cir. 1999), *vacated in part on other grounds*, 203 F.3d 1304 (11th Cir. 2000).

Defendant argues the transient nature of motel rooms means information becomes stale more quickly than a traditional residence, such as a house or apartment. Even taking Defendant's argument as true, other factors such as the length of time and nature of the suspected crimes weigh against a finding of staleness. For instance, here, Defendant's alleged drug crimes were continuous and protracted, which makes time of less significance. See Magluta, 198 F.3d at 1272 (noting drug crimes are inherently protracted and continuous).

Likewise, the length of time—only two days—weighs strongly against a finding of staleness. See United States v. Johnson, 290 F. App'x 214, 223 (11th Cir. 2008) (rejecting defendant's claim of staleness, therein 15 days, to search a residence associated with an ongoing, drug trafficking operation, and citing cases finding much older information, such as, 6 months,

13

11 months, and 9 months not stale) (citations omitted). While the Eleventh Circuit has not considered precisely how fresh information needs to be in a warrant for a hotel or motel room, other courts have found much older information was not stale. See e.g., United States v. Murphy, 241 F.3d 447, 458 (6th Cir. 2001) (holding a search warrant for a motel room supported by information over a 5-day period was not stale, especially considering the officer provided the information and the search warrant was executed on the same day); United States v. Malek, 2015 WL 5494183, at *13 (D.S.D. Sept. 14, 2015) (finding a search warrant for a hotel room not stale when it contained information between 4-days old and 2-months old); United States v. Golay, 502 F.2d 182, 187 n.10 (8th Cir. 1974) (suggesting 16-day-old information supporting a search warrant for a hotel room not too stale); cf. Sgro v. United States, 287 U.S. 206, 215 (1932) (undercover alcohol purchase at hotel 21-days prior to application for warrant too remote in time). Thus, based on the totality of the circumstances, the evidence was not stale after only two days.

Accordingly, Investigator Surrency's affidavit for the search warrant provided a substantial basis for the magistrate judge's determination of a fair probability evidence of criminal activity would be found at Defendant's motel room. The information provided to the magistrate judge was sufficiently recent to satisfy the Fourth Amendment's requirement of probable cause.

### E.     The Good-Faith Exception Applies

Even if the warrant lacked probable cause and was not sufficiently particular, Investigator Surrency and the other officers who executed the search were still entitled to rely on the signed warrant in conducting the searches of Defendant's motel room. Courts generally should not render inadmissible evidence obtained by police officers acting in reasonable reliance upon a

14

search warrant that is ultimately found to be unsupported by probable cause. United States v. Leon, 468 U.S. 897, 922 (1984). Indeed, under Leon, evidence seized in an illegal search is still admissible if the evidence was "seized by officers relying on a warrant issued by a detached and neutral magistrate." Id. at 913.

The Leon good-faith exception to the exclusionary rule applies in all but four limited sets of circumstances. Id. at 923. "The four sets of circumstances are . . . : (1) where the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth; (2) 'where the issuing magistrate wholly abandoned his judicial role . . .; (3) where the affidavit supporting the warrant is 'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; and (4) where, depending upon the circumstances of the particular case, a warrant is so facially deficient—i.e., in failing to particularize the place to be searched or the things to be seized—that the executing officers cannot reasonably presume it to be valid." United States v. Martin, 297 F.3d 1308, 1313 (11th Cir. 2002) (internal citations and quotations omitted).

Defendant contends the good-faith exception should not apply because the warrant contained only conclusory statements, the magistrate judge wholly abandoned his judicial role, and the warrant affidavit was so lacking and facially deficient that relying on it was entirely unreasonable. Doc. 32 at 8–9; Doc. 68 at 23–24. The Government disagrees, arguing the good-faith exception applies in this case as Defendant does not point to any false, dishonest, or reckless claims in the affidavit, the magistrate judge did not abandon his role, and reliance on the search warrant was not entirely unreasonable. Doc. 61 at 11–12.

15

None of the four <u>Leon</u> circumstances are present here.  First, while Defendant contends the affidavit misled the magistrate judge by relying on false information, this is not supported by the record.  Defendant has not pointed to any false information in the warrant.  Defendant complains the warrant is conclusory when Investigator Surrency states based on his training, experience, and knowledge, Defendant's transactions at the motel looked like drug transactions.  However, the magistrate judge was free to rely on Investigator Surrency's beliefs based on his training, knowledge, and experience when determining if probable cause exists.  See <u>Joseph</u>, 709 F.3d at 1100; <u>Bradley</u>, 644 F.3d at 1263–64 ("[A] police officer's expectation, based on prior experience and the specific circumstances of the alleged crime, that evidence is likely to be found in a suspect's residence satisfies probable cause.").  Along with these "conclusory statements," factual descriptions of Investigator Surrency's observations, Defendant's criminal history, and other evidence were also included in the affidavit.  <u>See</u> Doc. 61-1 at 6.  Thus, the affidavit supporting the warrant was not so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.  That is, because the affidavit contained facts and other evidence from Investigator Surrency's investigation, it was not so facially deficient in any respect, especially regarding the issue of probable cause, that the executing officers could not reasonably presume them to be valid.  Finally, there is no evidence the issuing magistrate judge "wholly abandoned" a detached and neutral role in issuing the warrant.  In sum, even if probable cause to support issuance of the warrants had not been established, the <u>Leon</u> good-faith exception would still bar application of the exclusionary rule.

Accordingly, I **RECOMMEND** the Court **DENY** Defendant's Motion for Suppression.[5]  Doc. 32.

---

[5]  Because I have found there was a substantial basis for the magistrate's probable cause determination, in the alternative, the good-faith exception applies, I decline to address the Government's

**CONCLUSION**

For the foregoing reasons, I **DENY** Defendant's Motion to Bifurcate Trial. Doc. 48. I also **RECOMMEND** the Court **DENY** Defendant's Motion to Suppress and allow the Government to use all information and evidence obtained as a result of the search as appropriate. Doc. 32.

Any objections to this Report and Recommendation shall be filed within 14 days of today's date. Objections shall be specific and in writing. Failure to file timely, written objections will bar any later challenge or review of the Magistrate Judge's factual findings and legal conclusions. 28 U.S.C. § 636(b)(1)(C); Harrigan v. Metro Dade Police Dep't Station #4, 977 F.3d 1185, 1192–93 (11th Cir. 2020). To be clear, a party waives all rights to challenge the Magistrate Judge's factual findings and legal conclusions on appeal by failing to file timely, written objections. Harrigan, 977 F.3d at 1192–93; 11th Cir. R. 3-1. A copy of the objections must be served upon all other parties to the action.

Upon receipt of Objections meeting the specificity requirement set out above, a United States District Judge will make a de novo determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge. Objections not meeting the specificity requirement set out above will not be considered by a District Judge. A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit. Appeals may be made only from a final judgment entered by or at the direction of a District Judge.

---

remaining argument—whether the inevitable-discovery exception would also bar application of the exclusionary rule. Doc. 67.

**SO ORDERED and REPORTED and RECOMMENDED**, this 24th day of June, 2021.

BENJAMIN W. CHEESBRO
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA